The 4th District Appellate Court of the State of Illinois has now convened. The Honorable John W. Turner presiding. Thank you. Good afternoon. This is case number 4200369 Brotze v. City of Carlinville. Will Council for Appellant please state your name for the record. My name is John Gabala and I represent Appellant City of Carlinville. Very well. Thank you. And for the appellee? Jacob Smallhorn for the Brotze. Okay. Thank you very much, Mr. Gabala. Please proceed. May it please the court. As I said, my name is John Gabala. I represent the City of Carlinville, the appellants in this case. The question presented today involves the Illinois Constitution, specifically Section 10A of Article 7 and the right of a non-home rule unit of local government to contract and to otherwise associate with another non-home rule unit of local government, as well as a private corporation, in any manner not prohibited by law. In this case, the purpose of the association was to construct a regional water treatment and distribution facility to provide safe drinking water to its members on a mutual or cooperative basis. This is just a partnership to provide water at the lowest possible cost to its members. I'm not going to spend a whole lot of time on the facts. I think it was briefed well by Council and myself. I think Council will also agree with me that none of the operative facts are really in dispute. As a result, this court's review is going to be de novo because it's really just about the application of the law to the facts in this case. Something to keep in mind as we go forward here this afternoon, while the focus is on Carlinville and Section 10A, the overall issue of public-private partnerships in this court's decision can reach well beyond just the parties here. As the amicus brief that was filed in our case on behalf of us by EJ Water Cooperative Details, the decision here will impact the right of non-home rule units of local government across the state of Illinois, and it'll affect their ability to engage in these types of public-private partnerships. Many of these other entities did exactly what Carlinville did in taking advantage of USDA grant money to finance the construction of water facilities. Carlinville obtained the same kind of USDA grant as EJ Water did. The purpose of that grant was to develop the regional water system. These kinds of partnerings, the idea behind these types of partnering is to achieve an economy of scale, to spread the costs out, maximize these federal dollars. For example, it's much more cost-effective to build one regional treatment facility for multiple small rural communities instead of having each small rural community build and maintain its own treatment plant for distribution systems. It's not a secret Carlinville has had lots of problems with its water in recent years. A lot of small communities are having problems as these facilities age and they're having to take on some additional costs and figure out how best to do these things. Dorchester is one of those communities. Carlinville explored their options for some time. They made an application to USDA, received a grant, and entered into a grant agreement. They weighed their options, ultimately decided to proceed with the formation of Alluvial. They did this with another non-home rule unit of government, Dorchester, and a private corporation, Jersey, or excuse me, a private not-for-profit water cooperative, Jersey Rural Water. At an open meeting, the city council voted to give Alderman City Campbell authority to represent Carlinville for that purpose. Through Alderman Campbell, Carlinville joined with Dorchester and Jersey Rural Water, executed Articles of Incorporation, and entered into bylaws to form Alluvial. Now, the Articles of Incorporation, these bylaws, these are agreements, these are contracts. They bind the individual members to form an entity pursuant to the Illinois Not-for-Profit Corporations Act. That act allows ownership and operation of drinking water supply facilities on a mutual cooperative basis. The bylaws, they govern the individual relationship among and between the individual members. Under the municipal code, Carlinville has the individual authority to construct wells, to build water treatment facilities, to build a distribution center, to secure public water supply. In addition to that authority, we have Section 10A of Article 7, which we will argue allows Carlinville to exercise that authority by associating with Dorchester and Jersey Rural Water to form Alluvial. So, for our purposes here today, we're specifically looking at the second sentence of Section 10A. And it says, units of local government and school districts may contract and otherwise associate with individuals, associations, and corporations in any manner not prohibited by law or by ordinance. It's our position that Carlinville has authority to contract and otherwise associate with Jersey Rural Water, the private corporation, under this second sentence. Now, plaintiff's argument all along has been that under Dillon's law, Carlinville only has authority granted to them by statute. And because there's no statute authorizing them specifically to form Alluvial, they can't do it. In other words, they can only associate and cooperate by using one of the statutes the plaintiff said argued apply. For example, we'd have to form some kind of water commission. To be clear, there is no statute prohibiting the formation of a not-for-profit corporation. Admittedly, there's no statute that says we can do what we did. What there is, though, is Section 10A, which allows Carlinville to exercise the broadest brand of authority that already possesses over the public water supply in cooperation with another non-home rule unit, Dorchester, and a private not-for-profit corporation, Jersey Rural Water. Now, plaintiff's overall theme here has been asking the courts to rewrite the second sentence of Section 10A. They want you to construe the second sentence, like the circuit court did, to require both a contract and an association. We've already talked about a little bit how the articles of incorporation are a contract, and that's in Illinois. But for sake of addressing this argument, we'll pretend for a few minutes that it's not a contract. Looking at the specific language of the second sentence of 10A, in the phrase may contract or otherwise associate, first right off the bat we see may, and we all know that may means discretion. The term otherwise is also used in that phrase. Otherwise modifies the word associate. Otherwise means in a different way. Read together, phrase means you can contract and also associate in a different way other than by contract. Section 10A can't be reasonably interpreted to require both a contract and an association, and doing that would read the word otherwise to be completely meaningless, which when we look at interpreting statutes, and in this case a constitution, we're not to be construing things to be meaningless. It's in there for a reason. The word any is also used in the phrase in any manner not prohibited by law. Any means any, without restriction. Any modifies the word manner here. This phrase means then that you have discretion to choose any way to associate with a private corporation as long as it's not prohibited by law. Now, plaintiffs have argued many times this just doesn't make sense or it can't be. It can't just be municipalities can do whatever they want in the context of section 10A, and we would argue that exact concern was expressed and addressed in the constitutional convention debates, the CONCON debates. If you look at the section 10A, it says certain delegates expressed a fear that section 10 would in effect give local governments a blank check, that this open-endedness of section 10 would result in unfettered and unbridled discretion on the part of these units of government. The sponsors of this section assured the constitutional convention that this would not be the case. It was pointed out time and time again that the state legislature could regulate the activity of these units of government via legislation, but argued that this isn't so much a legal question for plaintiffs, it's a legislative one, and maybe it's better taken up across the street with the General Assembly. There isn't a law outlawing or prohibiting what Carlinville did, and if they're saying there should be, well that's not necessarily to be before this court, it should be in front of the General Assembly. It's a lobbying issue, not a legal issue. Plaintiffs have also argued over and over the phrase, in any manner not prohibited by law, should be read to be in any manner authorized by law, but this is the exact subject of what we've referred to and called the Matthias-Martin Amendment, which we address in page 35 of our brief. Mr. Matthias explained the amendment by saying the proposal is we strike the words when authorized by law, and then we add at the end of the sentence the words, in any manner not prohibited by law or ordinance. This is the same authority they, municipalities, have with respect to intergovernmental cooperation. As it is now, they have to get prior legislative authority before they may do it. The amendment would permit them to go ahead on this cooperation in the private sector, unless the legislature had prohibited them from doing it, or unless it was prohibited by an ordinance. This Matthias-Martin Amendment was subsequently adopted, and it is what exists as Section 10a today, and that's the ballgame, folks. That addresses the main points in opposition to what Carlinville did in forming alluvial. Now, I know sometimes legislative intent can be specious and unmeaning. Justice Steigman, I know you've quoted Justice Scalia in the past, and we're governed by laws and not by the intentions of legislators, and I agree with that. The Constitution, like statutes, should be interpreted based on the written language, and I think the written language that's here is sufficient, but at the same time, the CON-CON debates go a long way in specifically addressing plaintiff's arguments and explaining why the delegates chose that unless prohibited by law, in place of authorized by law language should be used. Rarely do we ever get such clear explanations. You are asking us to conclude the trial court was wrong in this case. Where did it go wrong? What happened? I can't speak for the trial court other than what is in the order. Obviously, I disagree with what's in the order, Your Honor. I think, I don't know. I don't know beyond the reasons I can outline specifically. I don't know why the court went wrong. I think that trying to use the dichotomy of the and or without taking the consideration, the context of where it's being used and what it's being intended to remedy, I think perhaps there was a misunderstanding on the use there. Is my understanding correct that you made the same arguments of the trial court that you've made to this court? For the most part, because of the orders in the trial court, the and or issue was brought up sui sponte during the hearing on motion for summary judgment. We got to address those in briefing in our proposed orders. So some of those arguments weren't able to be made. But for the most part, I believe most of our arguments were in fact made. Okay, go ahead. Okay. So just to finish up on the idea of using the letter slave language, I don't think this court has to rely on the con debates at all to resolve this case, I think the plain language is enough. But I don't think the dates, the debates can be completely ignored, giving what they provide us. To the extent that plans to argue that there does have to be both a contract and an association. And that somehow that this requiring both with regard to a municipality, cooperating with a private corporation, con con debates kind of talked about to that there doesn't this isn't intended to be some heightened level of scrutiny. Because it's a private public partnership. The mathias Martin amendment discussions make it clear that a municipality should have the same authority with corporations as they have with respect to intergovernmental cooperation. Now, this all is not to say that Carlinville is without authority over the public water supply. We've cited to multiple sections of the municipal code page 26 of our brief shows that Carlinville has broad authority on other ways it can procure a public water supply, construct water distribution facilities and do so in association with other governmental and private corporations. This all sounds a lot like what they did with alluvium plaintiffs have argued before that, you know, this exact scenario is not contemplated by the sections of the municipal code. If we look at the party and the Connolly cases, which we cited to page 27, or a brief, they tell us that when a local government cooperates in a partnership or a joint venture, courts are not to strictly construe the statutory grants of authority under which they act there to broadly construe those that authority. And I would argue that broadly construing authority covers what took place here in this case. To the extent section 10 a requires both the contract in addition to association, assuming for purposes of this that we would, again, we've said that the articles of corporation and the bylaws are sufficient and qualify as such contracts. This is Illinois law, we've cited to a number of cases in a brief saying that the trial court refused to accept that argument. But I think that's clearly contrary to the law that's out there. Plaintiffs argued in the brief that the articles and bylaws don't work in this case, because they didn't come before the formation of alluvial. A couple things on that. These are agreements creating alluvial. So at the very least, they're contemporaneous with the creation of alluvial. The second point is nowhere in section 10a does the word before appear. You don't contract a contract. And even if you did, section 10a doesn't impose this before requirement. So we have plaintiffs wanting to read prohibited by law as provided by law and read the word before in where it isn't. They're asking the court to rewrite section 10a instead of following the plain language as written. And I would ask the court to consider that as they interpret these things. Another point I want to address, which counsel raised in the brief, and I'm going to try this my best Latin. They want us to use this court to use the canon of construction expressio unis ex exclusio alter eris, which sounds like something from Harry Potter. But it's a canon of construction that they want us to find that anything not authorized specifically by the various statutes the plaintiff cites is not authorized by law. But again, going back to what we just discussed, section 10a does not say authorized by law, it says prohibited by law. So again, plants argument was regarded as requiring the court to rewrite the section and disregard the unless prohibited by law phrase. Councils use the example before, you know, a child can have some carrots in the fridge doesn't mean they can take a cookie from the counter. But reality section 10a is more like when I tell my little girl, she can have any snack in the kitchen. Now that includes cookies on the counter and fruit in the fridge. Unless mommy, the General Assembly has already said you can't have anything from the kitchen counter. That's what the express language of 10a gives us. You can do it unless the General Assembly says so. Even if you accept all of plants arguments with regard to 10a, and even if you accept all the trial courts findings with regard to 10a interpretation, everything mandamus relief is still not appropriate in this case. mandamus can only be used to compel a public official or public body to perform a ministerial where they exercise zero discretion. mandamus isn't designed for figuring out what right a petitioner might have or what the public officials duty is supposed to be. plaintiff's complaint alleges they had a right to expect their local government to conduct itself with transparency in accordance with OMA and other accountability laws. This theme of transparency has kind of bled into the statutory and the constitutional analysis in this case. I just want to address briefly, there is no OMA and there's no FOIA violation here. The trial court as much found that because the facts did not support those things. I expect there may be some discussion out here in a bit. The problem is that we supposedly have violated some transparency statute. Council won't tell us what that is. If plaintiff wanted to allege something that was improperly if there should have been something that was should have been public and it wasn't public, you file an OMA, file a complaint for an OMA violation. Plaintiffs did neither because they couldn't because as the circuit court found the facts did not support those claims. To try to bootstrap some unnamed transparency violation, it just doesn't make sense. It distracts from really what the issue here in this case is. That leaves us with plaintiffs claiming their complaint that it's a well settled principle of Illinois law that members of the public have a protectable interest in ensuring that public officials follow the requirements of public statutes. That seems pretty general to me. It doesn't seem at all like a situation where a specific right doesn't already have to be figured out or that the public official's duty has to be sorted out. I'm not even sure what statutes we're talking about here. As we talked about in our brief extensively, none of those statutes cited by plaintiff require defendant to organize its water supply in any given way and none of them require defendant use them. In fact, the idea that there's so many options out there really cuts against the idea of mandamus. Inherent in the existence of multiple options is this idea that discretion exists to make a choice. Even if they did make a choice from plaintiff's menu of suggestions, Carlinville would be exercising discretion and they would be exercising judgment as to which one to use. It's the exercise of that discretion and the exercise of that judgment that shows us mandamus was the incorrect remedy here. Looking further at the specific writ the court issued, the writ says is issued to compel the undoing of an act not authorized by law to require public entities such as the city of Carlinville and its officials to compile it with state law. I don't think that makes any sense in the context of mandamus relief. The creation of alluvial was not ministerial binary act lacking discretion. The point of mandamus is that mandamus issues, the next step is carried out. For example, the board of elections certifies an election. This writ doesn't get the job done because the job is not fit for mandamus relief. I see I'm just about out of time. If there aren't any questions, I'll yield the balance of my time. I don't see any questions. Thank you. You will have rebuttal. Thank you. Mr. Smallhorn. All right. May it please the court. I did want to address one issue regarding the standard of review. We did bring up in our appellee brief that it is de novo for most of the claims made, but not with regard to the lashes argument. I think the court would be required to adhere or to review that under an abuse of discretion standard, just that specific one. And we did cite case law to it. I wanted to spend a little bit of time talking about some questions that were raised at the last argument we had, essentially, in this case. And that is, Judge Steigman asked me the question, if we find that your interpretation of section 10A is wrong, do you lose the case? And I quickly responded, I think so, yes. Well, I've thought about it more, and I think that was an overly the issue incorrectly, at least from the standpoint of the plaintiffs in this case. I look at Article 10A of Section 7 of the Constitution as a framework. It is a general grant. Nobody, we're not trying to make the argument here that to try to reverse the effect of Dillon's rule and re-reverse it or take us back to an old reading of the Constitution. What our argument has been all along, the plaintiff's argument in this case, is that there are many statutorily authorized ways for Carlinville to go about doing what it did, and it elected to ignore all of them. So you must read Article 10A in the context of the other laws ordinances. It says, unless prohibited by other laws and ordinances. So I think what I'm getting at, Judge Steigman, is I want to change my answer. There are other laws and ordinances that would preclude Carlinville from doing what it did in this case. And we've argued these things. They're in our pleadings. It's not a surprise or anything like that. But I want to give an example. You asked me about associations. What's an association in addition to a contract? Well, I think you have to look at the statutes to see what that is. And I'm going to give a more concrete example because I think it illustrates at least what my interpretation of Section 10A is. And you guys can take that for what it's worth. But I want to look at the context of the Municipal Joint Action Water Agency. That's 5 ILCS 220-3.1. And I just want to talk about what it requires. It doesn't require specific content of what this Joint Action Water Agency will look like. It simply says that if you want one, you need to have approval. Each body included in it needs to approve an ordinance. And it's limited specifically to municipalities, public water districts, townships, state universities, and counties. And instead of boring everyone with going through all the other statutes we cited, I will say this about them. They all contain similar requirements. They either limit who can enter into them and their limitations, or they require the approval by ordinance of a contract or something of that nature. Something to happen before the law can take effect. So while I agree, the word before is not in Section 10A, that's because it's in the Municipal Code, in the Intergovernmental Cooperation Act. It's in the requirements for publication of any appropriation. For example, and again, we've cited these, Section 5 backslash 8-7.71 of the Municipal Code says that no contract shall be made by corporate authorities or by a committee or member thereof, and no expense shall be incurred by any of the officers or departments of any municipality, whether or not the object of the expenditures has been ordered by the corporate authorities or not, unless an appropriation has been previously made concerning that contract or expense. So to answer your question, did somebody have a question or I didn't want to, okay. To answer the because the before is in the Municipal Code. We're not asking the court to make new law, we're simply asking the court to look at Section 10A in the context of all the other laws that the legislature has made to circumscribe the activities of non-homeroom municipalities and other actors. And just by way of reference, even Section 8-1-7 of the Municipal Code references back to, in subparagraph E of that provision, Article 7 regarding intergovernmental cooperation. It doesn't, it says that notwithstanding any provision of this code, to the contrary, the corporate authorities of any municipality may enter into any multi-year contract or otherwise associate for any term under this provisions of Section 10 of Article 7 of the Illinois Constitution or the Intergovernmental Cooperation Act. So it references back to it. The legislature has made attempts to circumscribe what government entities can do regarding contracts. It's right here in the Municipal Code. And it's not any secret to people that practice municipal law. Another example, Section 8-9-1 of the Municipal Code contains very specific public work and improvement bidding requirements for any public work where expense exceeds $25,000. So there are laws regarding contracts and those types of things that require municipalities like Carlinville to take an action. We're not asking the court to abrogate calmly or find that decision in that case is wrong. We're not asking the court to infer things from the Constitution. We're simply arguing that in this case, Carlinville did not follow the rules required of it under the Municipal Code, under the Intergovernmental Cooperation Act, under the statutes, and they are using their actions to appropriate municipal funds. Mr. Smallhurst, is that what the trial court ruled or the trial court simply ruled that the constitutional provision didn't authorize Carlinville to do what it did? I think the trial judge made both arguments, Judge Steigman. She said that they're limited in two very specific ways. The first one being, she said they're limited to the statutorily prescribed methods that are contained in the compiled statutes. So I think in that instance, yes, she did make that ruling too. And she also did rely on her argument regarding the and or, and I think that that still, it still makes sense to me, her argument about the and and the or in that context. And the fact that, you know, we've talked about intergovernmental cooperation, Mr. Gabala raised the Conley case, and I don't really have much of an argument against what he said. I will just point out one thing about the Conley case. It concerns two municipalities and cooperative action. And the court found simply this, that there wasn't a joint venture with regard to the sale of gravel. So they weren't even looking for a contract. They were looking for a joint venture in the Conley case. I think we have to remember here, we don't have a municipality, we've got a private company in this circumstance. And I think that a contract would also be required in this instance. And it would have to go through the requirements that any municipality has to approve a contract. And that didn't happen here. The bylaws were not approved by the city of Carlinville, to my knowledge, and that's not been in the case. Now there was a water service contract, Mr. Gabala mentioned in his reply brief, that happened later. But that's the contract that's been in front of them, in front of the municipality. And we have to remember, this concerns appropriations of potentially millions of dollars of grant money awarded to Carlinville through the federal loan program. So they have to adhere to the provisions of the municipal code when it comes to appropriating the money and things like that. So just to reiterate again, I agree with Mr. Gabala in the court, there is no procedure specified in Section 10A of Article 7 of the Constitution. It's a framework. And on top of that framework, you have to impose the statutes that the legislature has passed to fill in that framework. And there have been laws passed. As we have said kind of ad nauseum, there are many ways that Carlinville could have done this differently. Some of those even including working with Illinois Alluvial. They just couldn't do it this way. We're looking at 10A to say, oh, this gives you some extra method for doing what you want. It's a catch-all, if you will. And I don't think that applies here. That's why we talked about that maxim of statutory construction. I have the same problem Mr. Gabala has with Latin. So I'll call it the cookie canon, if that's okay. The cookie canon says you can't do it, if somebody gives you 10 ways to do it, you can't pick an 11th way to do it because it's implied that there are no other ways to do it. We can look at the, and I agree with what he said in his reply, it's generally a canon that is applied to a specific provision in a list on a statute. But it has been applied across statutes and we did talk about that in our brief. And I will say this, it's also just common sense. If the, what Carlinville is essentially asking the court to do is to say exactly what Mr. Gabala said in his argument, you can have whatever you want in the kitchen. And I don't think that applies here. He said, mommy has said, you can have whatever you want in the kitchen. Well, I think mommy has said, no, in this case, mommy gave multiple ways for you to get what you want. And you chose a way that wasn't authorized by law and are instead trying to use this very broad statutory grant that regardless of whether the court draws a negative inference or a positive inference for the, unless prohibited by otherwise prohibited by law or ordinance section says, you got to stick to what the legislature has given you. It's not some carte blanche grant of power, like they're saying, especially in circumstances where the legislature has given you multiple ways to fix your problem. We're not trying to argue that they can't do what they did or that all of these organizations should be overturned. We're simply saying, you've got to stick to the rules that the legislature has laid out for solving these water problems. Mr. Smallhorn, can you explain to me your understanding of what the goal or the purpose of section 10a is generally? Well, I think Mr. Gabala did accurately and explain it very well. I think the purpose of section 10a is to give a much broader grant of power regarding intergovernmental cooperation. And all I'm trying to say is it is a much broader grant. It does reverse the inference regarding intergovernmental cooperation. I'm not trying to argue that. All I'm trying to say is this, you still have to adhere to the minimum statutory framework that the legislature has laid out, because that's what the framers said. They pointed back to the laws and ordinances. Let me follow up, Mr. Smallhorn. What do you think the purpose or what can we glean from the legislature is the purpose of to contract and associate? Oh, I the Royal and what will be the purpose of those two things? Well, I think that they I think that they require and we're asking me to again speculate a little bit. I think that it requires a contract in addition to the association with a with a private entity for the very reason why the plaintiffs in this case are upset. A private it prevents private entities from enter from creating contracts that nobody ever gets to see. I think we lose sight in this. I think we've kind of lost sight in this case of the of what really of the facts, which I agree, we don't really dispute a contract, which wasn't so bylaws and articles of organization were created for a company that was never explained to the public. And it was done after the fact. And I think that I think that the if if I were to hazard a guess, the reason why that second sentence is in there in our section 10 A for private entities is so that there has to be a contract and the governmental entity has to talk about it before they approve it, especially if they're going to do things like appropriate money. That's why those provisions of the municipal code I cited to you talk about the possibility of getting rid of appropriations of it if they're not of a certain size or if it's with another governmental entity because government because as you can see in paragraph one in the Conley case is a good example. They have a pretty broad power when it comes to relating to each other. They I mean, the Conley case basically just says a joint venture. It doesn't require a written contract, but the municipal code does require written contracts and transparency with regards to public projects with private companies that are going to that are going to require the expenditure of municipal funds. So there I mean, that's why I think it's a transparency issue. And I understand, yeah, all you get with if they just got a water contract with a private company, that it wouldn't have the same level of continued reporting that, you know, the defendants are saying that there is in this case, because the member comes back to the meeting and can give a brief summary of what happens at EJ water at the, I'm sorry, at the alluvial meetings. But I will say this, a water contract is very specific. And there's breach, there's duty, it's public, the public can go see it, they can know exactly what their rights are, they can tell if they're getting a good rate or not. And none of those things happen in a transparent way with alluvial. And that brings me, I've only got two minutes left. But that does bring me to the last point I wanted to address. We are not arguing that the OMA was violated, or that there was some transparency violation from what alluvial did, we're arguing alluvial never should have been created in the first place the way that it was. So that's why there's no FOIA or OMA complaint with this, because there was nobody to send a FOIA request to and the court has in its file alluvial's letter, indicating that they won't, they won't abide, you know, they won't provide any information and they won't let people attend their meetings. That's the exact type of issue that I think this very broad language in section 10a was intended to prevent with private companies, because it point again, it points back the statutes, there are affirmative requirements for municipalities with regards to contracting, if they want to open a joint action water agency, a water district, they're creatures of statute, the process is delineated, it's been laid out, it's been explained, there are definitive requirements. And Carlinville and alluvial should not be allowed to circumvent them simply because they find them to be inconvenient, your honors. Okay, thank you, counsel. Is there any rebuttal? Briefly, your honor. The Constitution is not a catchall. I think we can all agree with that. Section 10a provides what it provides. It doesn't point to all these other laws that it points to the idea that you can do it unless one of these unless there's a law prohibiting it. Each of these individual statutes that counsels pointed out to him that they cite in the brief, and we've addressed their brief at length, start out by saying may. Now, I agree, once you decide to avail yourself of these individual statutes, there are specific requirements that then you must follow once available. But in no way can any one of those statutes say shall, again, we've addressed that at length in the brief. Each of those things is an option. Again, going back to the idea of mandamus, you have an option to pick between and among the statutes if you choose, because all of them say may. Again, discretion is part of that. And again, why mandamus is appropriate in this case. Mr. Caballa, let me ask you this. It seems that what Mr. Smallhorn was arguing to the court is that while the Constitution, let's assume, might permit an arrangement of this sort, there nonetheless must be some sort of statutory route that a city like Carterville can take to achieve the goal of what it achieved here, and they didn't follow this if there are statutory routes, the city can avail themselves of it or not as they see fit, but the constitutional language doesn't require it. Is that what you're arguing? I'm arguing, Your Honor, largely yes, to this point, because the statute, the Constitution doesn't talk about authorized by law, doesn't talk about following a statute. It talks about what Carlinville did. Not unless you, I don't believe any of them prohibit. I don't think there's an argument. I think it's undisputed that there's no statute out there that prohibits what Carlinville did. So Mr. Smallhorn's argument that the Constitution permits it, but permits it only if Carlinville proceeds in accordance with some statutory structure. Yeah, and I don't see that requirement in Section 10A. There's no reference to authorized by law, and looking back at the Compton debates, we don't have, I mean, the idea of authorized by law, that language was pulled in place of prohibited by law. So your argument is authorized by law would mean essentially what Mr. Smallhorn is arguing to the court now? I would think yes, and that's going back to the idea of Dillon's rule originally. The Dillon's thing is municipalities, non-home municipalities have only those ability which is in statute or by Constitution, and here we have the Constitution. You can't ignore Section 10A, and you certainly can't tag along to the end of Section 10A that, you know, it's referencing you can contract and otherwise associate in any way that's not prohibited by law or by ordinance, as long as it's also in following these 10 other things that are in statute. It just, it's not what's there. It's not the plain language. It's not the written language. It's there. Section 10A doesn't say we have to follow some kind of statutory framework. It doesn't have a process. It doesn't have a framework in there. Again, we're looking at the language of the Constitution. It doesn't talk about appropriations. It doesn't talk about the types of things counsel has addressed here in his argument. I think that, again, each one of these statutes, now if any of these statutes, Judge Steigman said shall, we have a different story. They don't. Each one of these seven or so or eight or so, I think it is that counsel points out to, each one of them starts with may. You may do these things. If you had to, if, I guess all of them couldn't say shall because you'd have to avail yourself of all of them, I suppose, but if, you know, it was, if that was a different story, I think then you were automatically obligated then to avail yourself of the requirements of the strictures underneath, you know, 8-7, section 8-7-1, for example. So Ms. Smallhorn seems to be arguing that these various alternatives saying may, that Carlinville can pick any of these alternatives, but it's got to pick one of those and can't use something not specifically set forth. That seems to be the argument, yes, and I think Carlinville could pick any one of these alternatives if they so chose in their discretion. They could also avail themselves of section 10-A and go about comporting themselves the way they did. So the absence of their choosing one of these statutory schemes, in your argument, doesn't constitute a prohibition, a statutory prohibition on what they propose to do. Absolutely not. And that's what your claim is the legislature would have to do in order to bar this action? They would have to have a statute out there, as it should shall, that mandates or obligates someone to follow the statute. And again, going back briefly for Mandamus, I think I have a half a second left here. Even if they, in exercising their discretion, even if they make a mistake, wrong-headed mistake, and they mess the whole thing up, you're still exercising judgment, you're still exercising discretion, Mandamus is therefore inappropriate. Okay, counsel, you're out of time. Gentlemen, thank you for your arguments. The case is submitted and the court stands in recess. Thank you.